# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSHUA MICHAEL VANWAART,<br><br>    Defendant. | Case No. 17-CR-4063-LTS<br><br>**REPORT AND RECOMMENDATION** |

Defendant Joshua Michael VanWaart moves to suppress statements he made during a custodial interrogation (Docs. 31, 31-2), arguing that he unambiguously invoked his right to counsel by stating, "Well, I'd like to get my lawyer here so I don't do something wrong." He also argues that any waiver under *Miranda v. Arizona*, 384 U.S. 436 (1966), was not voluntary because after officers read him his rights, they said that talking to them "can't hurt [him]" and suggested that by the time the court appointed an attorney, it would be too late for him to provide information to the officers that could constitute substantial assistance. The United States (the Government) resists the motion, arguing that VanWaart's request for counsel was equivocal and his *Miranda* waiver voluntary. Doc. 33. Because I find VanWaart unequivocally invoked the right to counsel, I recommend **granting** the motion to suppress (Doc. 31).

## I.  BACKGROUND

In May 2017, the United States Attorney's Office sought to speak with VanWaart as part of an ongoing federal drug investigation, and the court appointed counsel to represent VanWaart. Doc. 35 at 1-2. The United States Attorney's Office sent a letter to VanWaart's counsel, proposing an informal proffer session with VanWaart. Doc. 35 at 3-5. Although a proffer session was scheduled, VanWaart ultimately refused to

provide any information. Doc. 35-1 at 3-4. I take judicial notice that his appointed counsel's representation was terminated shortly thereafter (Docket, 17-mj-142-KEM (N.D. Iowa)). *See* Fed. R. Evid. 201; *Hood v. United States*, 152 F.2d 431, 433 (8th Cir. 1946) (holding that the trial court "could . . . take judicial notice of its own records in the original case, including the docket entries").

A federal grand jury indicted VanWaart in October 2017 on drug and firearm charges, and a warrant issued for his arrest. Docs. 2, 3. Shortly before midnight on November 14, 2017, Sioux City, Iowa, police officer Dane Wagner (Officer Wagner) arrested VanWaart as authorized by the federal warrant, as well as other outstanding state warrants. He advised VanWaart of his *Miranda* rights and phoned Drug Enforcement Administration (DEA) task force officer Todd Peterson (Officer Peterson) to advise him that VanWaart had been arrested. Officer Wagner asked VanWaart if he was willing to talk to DEA agents at the police station, and VanWaart agreed. Officer Wagner took VanWaart to the police station and left him to be interviewed.

VanWaart was given a bottle of water while he waited in an interview room. Around 2:00 a.m., Officer Peterson and two other drug task force officers entered the room.[1] An officer[2] quickly re-read VanWaart his *Miranda* rights and asked him if he understood. He said, "yeah," and when asked a second time, he nodded his head up and down. An officer told VanWaart that he had been federally indicted stemming from the same conduct they had tried to discuss during the attempted proffer session. When VanWaart heard the mandatory minimum for his charges, he became visibly upset. VanWaart asked what proof existed, and the officer responded, "if you don't want to talk

---

[1] As will be discussed more fully in this opinion, the Government submitted in support of its Resistance (Doc. 33) Exhibits 2 (video of interview) and Exhibit 3 (transcript of interview, Doc. 35-1), and excerpts of the interview referenced herein are taken from those exhibits.

[2] None of the interviewing officers testified, and the booking-room video focuses on VanWaart, with the officers mostly out of frame, making it difficult to discern which officer is speaking at any given time.

to me and try to cooperate"—to which VanWaart interjected, "I do" —"then I'll just tell the U.S. Attorney's Office, well, he wants to see everything we got on him and his charges and everything before he wants to help me." He continued:

> By the time you do that, you're going to go into United States Marshals custody tomorrow, today. [Y]ou'll get a court-appointed attorney this afternoon after your initial appearance in federal court. So you'll get to see a United States magistrate judge. They'll read you your charges, your possible sentence, and your fine amount. Then you'll get an attorney, and then you can tell your attorney that you want to see all the discovery, and you can see all the discovery. But by that time, the United States attorney and us are done. . . . You'll get to see everything. That's fine. I got no qualms with that. That's your right.

After a brief discussion about VanWaart eluding law enforcement in the past, the following exchange occurred:

> Officer: You want to talk about it or what?
> VanWaart: Can it help me?
> Officer: Can't hurt you.
> VanWaart: Can it help me? I gotta know that.
> Officer: I'll tell you right now, you can't get a promise—any . . . cop that promises you anything is a . . . liar, right? There's two people that can promise you anything. It's a United States attorney or an attorney and a judge. All I can do is tell the United States attorney that, yep, Josh admitted it; Josh told me the truth; he cooperated fully. And in my experience—and I've been doing this a long time—the U.S. attorney usually gives you some benefit for that. I can't promise you shit. If you're going to sit here and ask . . . me for some type of promise or guarantee, you ain't going to get it. You got to roll the dice and chance it. Otherwise we're just wasting our . . . time.
> VanWaart: Well, I'd like to get my lawyer here so I don't do something wrong.
> Officer: That's completely up to you, man. Tell me you want a lawyer, and I'll leave. Once you ask for a lawyer, I'm out of here.
> VanWaart: We can't talk after that?
> Officer: Not—not without your lawyer here, and you ain't going to get a lawyer down here in . . . five minutes.
> VanWaart: Why can't I talk to you with a lawyer, man?
> Officer: You can.

3

> VanWaart: Then what's the difference then? If I get a lawyer here right now, why can't I have one here present?
> Officer: You can. Dude, if you want one, you can. What lawyer—do you have a lawyer? Do you have one on retainer that I can call, say get down here to the [police department] right now?
> VanWaart: No, man.
> Officer: No. The court's going to appoint you one. That ain't going to be till tomorrow. By tomorrow everybody is going to . . . know, or they probably already do. And what good are you to me then? Essentially what you need to do is put somebody else in that . . . chair for me. And you didn't want to do that before. It's the same option today. It's called substantial assistance. You have to assist me substantially, and it's not some bullshit guy with a[n] . . . eight-ball. Being honest and acceptance of responsibility and honesty gets you to get the United States attorney to give you consideration about whether or not they want to give you the downward departure motion so you can come below your mandatory minimum sentence. I can't guarantee you that he'll even do that so—
> VanWaart: I get to rat people off for nothing?
> Officer: I'll tell you right now—and you know that.
> Officer: You ain't the only one.
> Officer: Right. You know there's two people in federal prison, right, two different kinds? People that talk and people who wish they did.

VanWaart continued to talk to the officers without the presence of an attorney until the interview concluded around 3:00 a.m.

VanWaart filed a motion to suppress the statements he made in the interview (Doc. 31), and the Government resisted (Doc. 33). I held a hearing on the motion on March 21, 2018, at which Officer Wagner testified. Doc. 38. I admitted three exhibits offered by the Government: Exhibit 1, which contains documents related to the proffer session (Doc. 35); Exhibit 2, a video of the interview; and Exhibit 3, a transcript of the interview taken from the video (Doc. 35-1).

## II. DISCUSSION

Under *Miranda*, 384 U.S. at 479, a suspect subject to custodial interrogation must first be advised "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that

if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." The suspect must knowingly and intelligently waive these rights before the interrogation can proceed. *Id*. "After the [*Miranda*] warnings are given, . . . . if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present." *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). Once the suspect invokes his right to counsel, "a valid [*Miranda*] waiver . . . cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). Thus, "having expressed his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. at 484-85.

"Officers are only required to cease questioning if a suspect's request for an attorney is clear and unambiguous . . . ." *United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014) (citing *Davis v. United States*, 512 U.S. 452, 461-62 (1994)). "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459 (citation omitted) (quoting *id*. at 476 (Souter, J., concurring)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer . . . would have understood only that the suspect *might* be invoking the right to counsel," an officer is not required to cease questioning. *Id*. And "if a suspect is 'indecisive in his request for counsel,' the officers need not always cease questioning." *Id*. at 460 (quoting *Miranda*, 384 U.S. at 485). The Government bears the burden of proof to show a valid *Miranda* waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *see also Davis*, 512 U.S. at 470-71 (Souter, J., concurring) (rejecting "distinction between initial waivers of *Miranda* rights and subsequent decisions to reinvoke them" with regard

5

to the burden of proof); *McCree v. Housewright*, 689 F.2d 797, 801 (8th Cir. 1982) (applying *Miranda* waiver standard to determination of whether defendant invoked the right to counsel).

The parties dispute whether VanWaart's statement—"Well, I'd like to get my lawyer here so I don't do something wrong"—constituted a clear and unequivocal request for counsel. The Government relies on cases holding that requests prefaced by "maybe" or "I think" are insufficient to invoke the right to counsel. *See Davis*, 512 U.S. at 462 (holding that defendant did not unambiguously invoke the right to counsel by stating "Maybe I should talk to a lawyer"); *Mohr*, 772 F.3d at 1146 (holding that defendant did not unambiguously invoke the right to counsel by stating "I think I should get [a lawyer]"). The Government also relies on *Dormire v. Wilkinson*, 249 F.3d 801, 803, 805 (8th Cir. 2001), in which the Eighth Circuit held on habeas review that the state court was not unreasonable in determining that the defendant did not unambiguously request counsel by asking, "Could I call my lawyer?" to which officers responded, "yes," then proceeded with questioning when the defendant did not say anything more about an attorney. The court reasoned that "[c]onsidering the question in context, it [wa]s not clear that [the defendant] was actually requesting the presence of an attorney," because he "had just asked whether he could contact his girlfriend" (which was denied), and the officer "could have reasonably believed . . . that [the defendant] was merely inquiring whether he had the right to call a lawyer, rather than believing that [the defendant] was actually requesting counsel." *Id.*[3]

Here, unlike in the cases cited by the Government, VanWaart did not preface his request for counsel with language indicating indecisiveness. Neither did he ask a question related to his right to counsel such that the officers could have believed he was "merely

---

[3] The Government also cites to cases discussing invocation of the right to silence (not the right to an attorney). *See United States v. Farrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007); *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995); *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989); *United States v. Yodprasit*, No. CR15-4085-MWB, 2016 WL 1069671, at *4-6 (N.D. Iowa Mar. 17, 2016) (adopting report and recommendation).

6

inquiring" about his right to an attorney. The Government argues that VanWaart's request must be considered in context, which shows that VanWaart was attempting to negotiate a deal. In support of this argument, the Government relies primarily on VanWaart's subsequent statements as evidence that his request for counsel was ambiguous (although the Government also points to VanWaart's questions asking whether talking to officers would help him). Although statements that "*precede* an accused's purported request for counsel or [that] . . . are part of the request *itself*" may be considered when determining the ambiguity of a request for counsel, a court may not "construe [a defendant's] request for counsel as 'ambiguous' *only* by looking to [a defendant's] *subsequent* responses to continued police questioning and by concluding that, 'considered in total,' [a defendant's] '*statements*' were equivocal." *Smith v. Illinois*, 469 U.S. 91, 97 (1984) (per curiam) (quoting *People v. Smith*, 466 N.E.2d 236, 240 (Ill. 1984)). In other words, "[w]here nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease," and "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* at 98, 100.

Here, nothing leading up to VanWaart's request for counsel or in the request itself rendered it ambiguous. VanWaart unequivocally invoked the right to counsel when he said, "Well, I'd like to get my lawyer here so I don't do something wrong." *See id.* at 93, 97 (holding that the defendant unambiguously invoked the right to counsel when, in response to being told of his right to consult with an attorney and have an attorney present during questioning, he responded, "Uh, yeah[,] I'd like to do that"); *United States v. Carroll*, 102 F. Supp. 3d 1134, 1140-41 (N.D. Cal. 2015) (holding that the defendant unambiguously invoked the right to counsel when he said, "I'd like to have a lawyer with me that way I don't incriminate anybody or myself," and noting that "[t]he government does not take issue with this"); *United States v. Riley*, No. CR 06-187 DSD/FLN, 2006 WL 2640529, at *5, *8 (D. Minn. Sept. 12, 2006) (adopting report and recommendation) (holding that the defendant unambiguously invoked the right to counsel when he stated,

7

"Okay sir, I'd like to see a lawyer"). Considering what VanWaart said here, it is hard to imagine how his request could be clearer. It is irrelevant that VanWaart responded to further police-initiated questioning and that he did not unequivocally invoke his right to counsel a second time after an officer said, "[t]ell me you want a lawyer, and I'll leave." *See Smith*, 469 U.S. at 93, 100 (holding irrelevant that after the defendant invoked the right to counsel, the officer explained, "[y]ou either have [to agree] to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to," and the defendant responded, "[a]ll right[,] I'll talk to you then" (second alteration in original) (emphasis omitted). Once VanWaart stated that he would like an attorney, officers should have ceased questioning unless and until VanWaart initiated further communication. *Cf. United States v. Valdez*, 146 F.3d 547, 550-51 (8th Cir. 1998). I recommend that the statements VanWaart made after requesting the presence of counsel be suppressed from being introduced as substantive evidence in the prosecution's case-in-chief. *See Oregon v. Hass*, 420 U.S. 714, 714-15, 723-24 (1975) (holding that "inculpatory information" obtained after a defendant invokes the right to counsel is "admissible . . . solely for impeachment purposes after the suspect has taken the stand and testified contrarily").[4]

### III.   CONCLUSION

I respectfully recommend that the district court **grant** VanWaart's motion to suppress (Doc. 31) and prevent the government from using VanWaart's statements after his invocation as substantive evidence in its case-in-chief.

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and

---

[4] Because I recommend suppressing on this basis, I do not address VanWaart's alternative argument that any *Miranda* waiver was rendered involuntary by officers making statements that contradicted the *Miranda* warnings.

Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections. LCrR 59. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

DATED this 10th day of April, 2018.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa