**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. JOSHUA MICHAEL VANWAART, Defendant. | No. CR17-4063-LTS **ORDER ON REPORT AND RECOMMENDATION** |

This matter is before me on a Report and Recommendation (R&R) (Doc. No. 39) in which the Honorable Kelly K.E. Mahoney, United States Magistrate Judge, recommends that I grant defendant's motion (Doc. No. 31) to suppress. Neither party filed an objection. The time for objections has now expired.

## I. BACKGROUND

### A. *Procedural History*

On October 25, 2017, the grand jury returned an indictment (Doc. No. 2) charging Joshua Michael VanWaart (VanWaart) with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846 and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3), 922(g)(8) and 924(a)(2). On March 2, 2018, VanWaart filed a motion (Doc. No. 31) to suppress statements he made to law enforcement in a post-arrest interview. The Government filed a resistance (Doc. No. 33) on March 9, 2018. Judge Mahoney held a hearing on March 21, 2018. The following exhibits were admitted into evidence:

- Government Exhibit 1 – documents related to the Government's request for counsel to be appointed for defendant and request for an informal proffer

- Government Exhibit 2 – a video of defendant's post-arrest interview

- Government Exhibit 3 – a transcript of defendant's post-arrest interview

*See* Doc. No. 38. The Government also presented testimony from Dane Wagner.

Judge Mahoney issued her R&R (Doc. No. 39) on April 10, 2018. Trial is scheduled to begin June 4, 2018.

B.  *Relevant Facts*

Judge Mahoney summarized the following relevant facts in her R&R based on the exhibits and testimony presented during the suppression hearing:

> In May 2017, the United States Attorney's Office sought to speak with VanWaart as part of an ongoing federal drug investigation, and the court appointed counsel to represent VanWaart. Doc. 35 at 1-2. The United States Attorney's Office sent a letter to VanWaart's counsel, proposing an informal proffer session with VanWaart. Doc. 35 at 3-5. Although a proffer session was scheduled, VanWaart ultimately refused to provide any information. Doc. 35-1 at 3-4. I take judicial notice that his appointed counsel's representation was terminated shortly thereafter (Docket, 17-mj-142-KEM (N.D. Iowa)). *See* Fed. R. Evid. 201; *Hood v. United States*, 152 F.2d 431, 433 (8th Cir. 1946) (holding that the trial court "could . . . take judicial notice of its own records in the original case, including the docket entries").
>
> A federal grand jury indicted VanWaart in October 2017 on drug and firearm charges, and a warrant issued for his arrest. Docs. 2, 3. Shortly before midnight on November 14, 2017, Sioux City, Iowa, police officer Dane Wagner (Officer Wagner) arrested VanWaart as authorized by the federal warrant, as well as other outstanding state warrants. He advised VanWaart of his *Miranda* rights and phoned Drug Enforcement Administration (DEA) task force officer Todd Peterson (Officer Peterson) to advise him that VanWaart had been arrested. Officer Wagner asked VanWaart if he was willing to talk to DEA agents at the police station, and VanWaart agreed. Officer Wagner took VanWaart to the police station and left him to be interviewed.

VanWaart was given a bottle of water while he waited in an interview room. Around 2:00 a.m., Officer Peterson and two other drug task force officers entered the room. An officer quickly re-read VanWaart his *Miranda* rights and asked him if he understood. He said, "yeah," and when asked a second time, he nodded his head up and down. An officer told VanWaart that he had been federally indicted stemming from the same conduct they had tried to discuss during the attempted proffer session. When VanWaart heard the mandatory minimum for his charges, he became visibly upset. VanWaart asked what proof existed, and the officer responded, "if you don't want to talk to me and try to cooperate" – to which VanWaart interjected, "I do" – "then I'll just tell the U.S. Attorney's Office, well, he wants to see everything we got on him and his charges and everything before he wants to help me." He continued:

> By the time you do that, you're going to go into United States Marshals custody tomorrow, today. [Y]ou'll get a court-appointed attorney this afternoon after your initial appearance in federal court. So you'll get to see a United States magistrate judge. They'll read you your charges, your possible sentence, and your fine amount. Then you'll get an attorney, and then you can tell your attorney that you want to see all the discovery, and you can see all the discovery. But by that time, the United States attorney and us are done . . . . You'll get to see everything. That's fine. I got no qualms with that. That's your right.

After a brief discussion about VanWaart eluding law enforcement in the past, the following exchange occurred:

> Officer: You want to talk about it or what?
> VanWaart: Can it help me?
> Officer: Can't hurt you.
> VanWaart: Can it help me? I gotta know that.
> Officer: I'll tell you right now, you can't get a promise – any . . . cop that promises you anything is a . . . liar, right? There's two people that can promise you anything. It's a United States attorney or an attorney and a judge. All I can do is tell the United States attorney that, yep, Josh admitted it; Josh told me the truth; he cooperated fully. And in my experience – and I've been doing this a long time – the U.S. attorney usually gives you some benefit for that. I can't promise you shit. If you're going to sit here and ask. . .

3

me for some type of promise or guarantee, you ain't going to get it. You got to roll the dice and chance it. Otherwise we're just wasting our . . . time.

VanWaart: Well, I'd like to get my lawyer here so I don't do something wrong.

Officer: That's completely up to you, man. Tell me you want a lawyer, and I'll leave. Once you ask for a lawyer, I'm out of here.

VanWaart: We can't talk after that?

Officer: Not – not without your lawyer here, and you ain't going to get a lawyer down here in . . . five minutes.

VanWaart: Why can't I talk to you with a lawyer, man?

Officer: You can.

VanWaart: Then what's the difference then? If I get a lawyer here right now, why can't I have one here present?

Officer: You can. Dude, if you want one, you can. What lawyer – do you have a lawyer? Do you have one on retainer that I can call, say get down here in the [police department] right now?

VanWaart: No, man.

Officer: No. The court's going to appoint you one. That ain't going to be till tomorrow. By tomorrow everybody is going to . . . know, or they probably already do. And what good are you to me then? Essentially what you need to do is put somebody else in that . . . chair for me. And you didn't want to do that before. It's the same option today. It's called substantial assistance. You have to assist me substantially, and it's not some bullshit guy with a[n] . . . eight-ball. Being honest and acceptance of responsibility and honesty gets you to get the United States attorney to give you consideration about whether or not they want to give you the downward departure motion so you can come below your mandatory minimum sentence. I can't guarantee you that he'll even do that so –

VanWaart: I get to rat people off for nothing?

Officer: I'll tell you right now – and you know that.

Officer: You ain't the only one.

Officer: Right. You know there's two people in federal prison, right, two different kinds? People that talk and people who wish they did.

VanWaart continued to talk to the officers without the presence of an attorney until the interview concluded around 3:00 a.m.

Doc. No. 39 at 1-4 (footnotes omitted).

4

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. DISCUSSION

Because neither party has objected to Judge Mahoney's R&R (Doc. No. 39), I have reviewed it for clear error. I find that Judge Mahoney applied the correct legal standards in concluding that VanWaart clearly and unequivocally invoked his right to legal counsel while he was subjected to custodial interrogation and after being read his *Miranda* rights. Based on my review of the record, I find no error – clear or otherwise – in Judge Mahoney's recommendation and agree with her well-reasoned analysis.

### IV. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Mahoney's R&R (Doc. No. 39) without modification.
2. Pursuant to Judge Mahoney's recommendation, defendant's motion (Doc. No. 31) to suppress is **granted**. The Government is not permitted to use VanWaart's statements after his invocation of his right to counsel as substantive evidence in its case-in-chief.

**IT IS SO ORDERED.**

**DATED** this 30th day of April, 2018.

_____
Leonard T. Strand, Chief Judge